UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JASON JOHNSON,

          Plaintiff,          Case No. 17-11617

v                                    Honorable Thomas L. Ludington

ERIC LEONARD,

          Defendant.

_____/

**OPINION AND ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**

On May 19, 2017, Plaintiff Jason Johnson filed a complaint against Defendants Eric Leonard, Corey Telfor, and Avalon and Tahoe, Inc. ECF No. 1. Defendant Leonard is a detective with Gratiot County Sheriff's Office and during the time in question, Defendant Telfor was acting as a confidential informant for Leonard. Johnson was the target of one of Leonard's investigations and was arrested as a result of the investigation. During this time, Telfor and Johnson were coworkers at Defendant Avalon and Tahoe, Inc.

Johnson's complaint identifies four counts, including three different Section 1983 theories and a single state law count for fraud. Johnson claims that Leonard arrested or caused the arrest of Johnson without probable cause (Count I), that the information that Leonard furnished to secure the arrest warrant was erroneous and maliciously furnished (Count II), and that Leonard failed to control Telfor's actions as a confidential informant in a manner required by due process of law (Count III). ECF No. 1 at 5–9. Johnson also claims that Telfor fraudulently misrepresented the law to Johnson concerning the sale of medical marijuana (Count IV). *Id.* at 9. Johnson further alleged that Telfor was acting within his scope of employment as an employee of Avalon and Tahoe, Inc. *Id.* at 10.

In his answer to Johnson's complaint, Telfor filed a crossclaim against Leonard, alleging that Telfor agreed to act as a confidential informant because he feared for his life and liberty. ECF No. 6 at 15–19. Telfor also claimed that Leonard implicitly condoned Telfor's actions by not giving Telfor feedback on his interactions with Johnson. *Id.* On September 26, 2017, Telfor and Leonard agreed to dismiss Telfor's crossclaim against Leonard. ECF No. 22. On July 17, 2017, Johnson voluntarily dismissed Avalon and Tahoe, Inc. as a party to the case. ECF No. 10.

On April 30, 2018, Leonard filed a motion for summary judgment. ECF No. 33. For the following reasons, the motion for summary judgment will be granted.

**I.**

The relevant facts of this case begin with Telfor and Leonard. In September of 2013, the Mid-Michigan Area Group Narcotics Enforcement Team (MAGNET) arrived at Telfor's house with a search warrant for distribution of marijuana. ECF No. 33-2 at 13. Telfor had a medicinal marijuana card, but was growing too many marijuana plants. ECF No. 33-4 at 9. This was Telfor and Leonard's first encounter with each other. ECF No. 33-3 at 7; ECF No. 33-2 at 15. Leonard explained to Telfor that if Telfor worked as a confidential informant, Telfor could earn "credits" that the prosecutor would consider when bringing charges against him. ECF No. 33-2 at 15. Leonard explained that as a confidential informant, Telfor would be engaging in the controlled sale of marijuana. *Id.* at 15. Three individuals would each have to sell Telfor marijuana three different times in order for Telfor to earn enough credits to have one felony excused. *Id.* Telfor agreed to act as an informant and was never prosecuted for the conduct that prompted his original warrant. *Id.* at 16.

Telfor alleges that Leonard gave him inadequate guidance about how to interact with the individuals who would be selling him marijuana. ECF No. 33-2 at 17–18, 37, 55. Leonard claims

that he gave Telfor the guidelines that he gives to every confidential informant. ECF No. 33-3 at 17–18. This includes not buying more marijuana than they usually would and not purchasing from someone who uses marijuana for solely personal use. *Id.* at 37. Leonard admits that he did not address furnishing enticements when persuading potential confidential informants to sell marijuana. *Id.* at 78.

In February 2013, Johnson started working at Avalon and Tahoe Inc. as a line operator assembling boats. ECF No. 33-6 at 7, 16. It is here that he first met Telfor. *Id.* at 7. Telfor was a supervisor in the welding department, which was comprised of approximately thirty welders all working in the same shop. ECF No. 33-2 at 19. Johnson wished to be promoted into the welding department because it would increase his salary by four dollars an hour. ECF No. 33-6 at 45. Johnson was not originally a MAGNET target, but instead, was suggested by Telfor to Leonard as someone who could sell him marijuana. ECF No. 33-4 at 76. Leonard approved and Telfor began targeting Johnson as a potential seller for a controlled sale. *Id.* at 77.

Johnson claims that when Telfor first approached him about selling marijuana, Telfor told Johnson that his marijuana plants were diseased and that he needed more marijuana for his patients. ECF No. 33-6 at 45 at 46. Johnson thought that Telfor had a medicinal marijuana card. *Id.* at 46. Johnson alleges that Telfor told him that it was legal for Johnson to sell marijuana to him because it was a "gray area" of the law since they were both patients. *Id.* at 48–49. Johnson was reluctant, but Telfor continued to ask him about it over the next few weeks. ECF No. 42-3 at 44. Johnson agreed to sell to Telfor because Johnson believed that in exchange for the sale, Telfor would help him procure a promotion to welder. ECF No. 33-6 at 91.

Johnson first sold Telfor marijuana on October 17, 2013. ECF No. 33-2 at 11; ECF No. 33-8. Prior to the sale, Telfor met with Leonard. Leonard did a pat down search of Telfor, searched

Telfor's car, and placed the surveillance device on Telfor. ECF No. 33-4 at 11. Telfor met Johnson in the parking lot of a restaurant (Petticoat Junction) and Johnson sold Telfor a small amount of marijuana. ECF No. 33-6 at 50. Leonard had the capability of listening to the surveillance recording live during the sale. ECF No. 33-3 at 45. After the sale, Telfor returned to meet with Leonard. ECF No. 33-8.

Johnson sold Telfor marijuana a second time on December 3, 2013. ECF No. 33-4 at 17–19. Leonard performed the same routine of patting down Telfor, searching Telfor's car, and placing the surveillance equipment on Telfor. ECF No. 33-7. During the sale, Johnson and Telfor exchanged words and among his statements, Johnson said, "I'm trying to get in over to welding," "I know you shouldn't have to do deals like this to do that shit," and "I know I can do the job, hopefully seriously I really wanna move over…or else I'm leaving." ECF No. 33-9. As they were leaving, Telfor said, "See you in the morning." *Id.* Sometime after this second purchase, Johnson was promoted to welder. ECF No. 33-4 at 44.

Johnson sold Telfor marijuana a third and final time on February 19, 2014. ECF No. 33-2 at 22. During the sale, Johnson mentioned that his life had changed for the better since getting his new job. *Id.* As the sale was concluding, Johnson said, "Remember, patient to patient." ECF No. 33-10. As they were leaving, Telfor again said, "See you in the morning." *Id.*

During this time, Johnson claims that Telfor was helping him learn to weld because Johnson wanted to work in the welding department. Johnson alleges that they met before work no more than five times and Telfor would help him with his welding. ECF No. 33-6 at 96. Johnson also allegedly sold Telfor his welding helmet. *Id.* at 95. Telfor denies this and claims that he never helped Johnson with his welding. ECF No. 33-2 at 19.

Johnson was promoted to welder after being with the company for less than one year, even though there were other employees who had been waiting five to six years to be promoted to welder. ECF No. 33-6 at 94. Johnson alleges that this was because Telfor was involved in Johnson's welding tests and helped secure the promotion in exchange for selling him marijuana. *Id.* at 95. Telfor denies this and claims that Johnson did not receive preference over others who had applied for the promotion to welder. ECF No. 33-2 at 42. Telfor claims that Johhson simply passed the welding test and was placed on a list of potential candidates. *Id.* at 42. Telfor also claims that he lacked the authority to hire people into the welding department. ECF No. 33-4 at 41.

During this time, Johnson and Telfor went on two ice fishing trips together. ECF No. 33-6 at 44; ECF No. 33-2 at 26. Telfor claims that both of these trips were with a group of coworkers and that for at least one of the trips, Johnson invited himself along. ECF No. 33-2 at 26–27. Johnson's account is different and claims that at least one of the trips was with just Telfor, Telfor's father, and Telfor's son. ECF No. 33-6 at 86. Apart from these two fishing trips and the three marijuana sales, Telfor and Johnson did not socialize outside of work. ECF No. 33-6 at 88–89.

Three to six months after the third controlled sale, two uniformed officers arrested Johnson at a gas station. ECF No. 33-6 at 55. Johnson claims that Leonard was one of the officers, but that it was the other officer who initially approached him and stated that he was under arrest. ECF No. 42-2 at 2. A Michigan state court convicted Johnson for distribution of marijuana. *People v. Johnson*, LC No. 14-007022-FH, 2016 WL 4071137 (Mich. Ct. App. July 28, 2016).

Johnson appealed the decision to the Michigan Court of Appeals. *Id.* While the trial court record substantiated Leonard's testimony from the preliminary hearing held June 13, 2014, the state prosecutor did not call Leonard to testify during the entrapment hearing held September 12, 2014. ECF No. 33-4; ECF No. 42-3. Accordingly, the Court of Appeals' discussion of Leonard in

its opinion was brief. *People v. Johnson*, LC No. 14-007022-FH, 2016 WL 4071137 (Mich. Ct. App. July 28, 2016). The court stated that "[a]lthough the police controlled Telfor by meeting with him before and after the controlled buys and recording the conversation during the buys, law enforcement left Telfor completely on his own regarding his method of targeting, approaching, and luring others into his trap." *Id.* at *5. Excluding this statement, the opinion was essentially void of any reference to Leonard. It focused on Telfor and accepted his conduct as an agent of the state, but made no determination concerning Leonard's knowledge of Telfor's actions.

The court ultimately held that Johnson had been entrapped. *Id.* Under Michigan law, an individual is entrapped when "(1) the police engage in impermissible conduct that would induce an otherwise law-abiding person to commit a crime in similar circumstances or (2) the police engage in conduct so reprehensible that the court cannot tolerate it." *People v. Fyda*, 288 Mich App. 446, 456 (2010). Though Telfor was not a law enforcement officer, he was acting under color of law when he entrapped Johnson. "To act 'under color' of law does not require that the accused be an officer of the State. It is enough that he is a willful participant in a joint activity with the State or its agents." *Adickes v. S.H. Kress & Co.*, 90 S.Ct. 1598, 1606 (1970) (quoting *U.S. v. Price*, 86 S.Ct. 1152, 1157 (1966)).

**II.**

Leonard now moves for summary judgment. A motion for summary judgment should be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the initial burden of identifying where to look in the record for evidence "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the opposing party who must set out specific facts showing "a genuine

issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (citation omitted). The Court must view the evidence and draw all reasonable inferences in favor of the non-movant and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52.

### III.

Johnson's complaint levels three claims against Leonard under Section 1983: false arrest, malicious prosecution, and violation of due process. Leonard moves for summary judgment on all three counts. Leonard's motion for summary judgment will be granted because Leonard arrested Johnson pursuant to a valid arrest warrant, did not maliciously prosecute Johnson, and did not violate Johnson's due process rights. Furthermore, Leonard cannot be found liable for Telfor's actions as his supervisor.

### A.

In order to prevail on each of his three Section 1983 claims, Johnson must prove an element of knowledge and intent. For example, to establish a constitutional claim for false arrest, there must be proof that when applying for the arrest warrant, the officer "knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create[d] a falsehood." *Sykes v. Anderson*, 625 F.3d 294, 305 (6th Cir. 2010) (quoting *Wilson v. Russo*, 212 F.3d 781 (3d Cir. 2000). In a malicious prosecution claim, the officer is not liable "when the claim is predicated on the mere fact that the officer turned over to the prosecution the officer's *truthful* materials." *Id.* at 314.[1] Lastly, for a constitutional claim of entrapment, the officer's conduct must

---

[1] In his response, Johnson claims that this statement of law is incorrect and that instead, the appropriate inquiry is solely whether Leonard "influence[d] or participate[d] in the decision to prosecute." ECF No. 42 at 17. Johnson cites to *Fox v. DeSoto*, but does not consider the explanation by the Sixth Circuit in *Sykes* regarding law enforcement officers. *Sykes* involved a law enforcement officer who had submitted an arrest-warrant application and investigative report, similar to the actions of Leonard in this case. *Sykes*, 625 F.3d at 314. The court stated "It is absolutely clear…that an officer will not be deemed to have commenced a criminal proceeding against a person when the claim is predicated on the mere fact that the officer turned over to the prosecution the officer's truthful materials." *Id.*

have been "outrageous" for a court to even consider whether or not it was a violation of due process. *U.S. v. Russell*, 411 U.S. 423, 431–432 (1973); *Giovanetti v. Tomasi*, 1994 WL 198188, at *2 (6 Cir. 1994).

**B.**

One additional principle of Section 1983 law is generally applicable to all three of Johnson's Section 1983 claims.[2] Under Section 1983 agency law, a principal is not derivatively liable for an agent's actions solely because the principal was supervising the agent. That is, "a supervisor cannot be held liable simply because he or she was charged with overseeing a subordinate who violated the constitutional rights of another." *Peatross v. City of Memphis*, 818 F.3d 233, 241 (6th Cir. 2016). A party cannot establish liability in a government official on a theory of *respondeat superior*. *Id.* In order to establish liability in a supervisor, a party must demonstrate that the supervisor "either encouraged the specific incident of misconduct or in some other way directly participated in it." *Id.* (quoting *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)).

**C.**

Johnson has not established that Leonard knew of Telfor's misconduct in entrapping Johnson. To the contrary, the depositions of both Leonard and Telfor substantiate the fact that Leonard was unaware of any alleged misconduct by Telfor. Leonard stated that he did not know that Telfor was allegedly helping Johnson learn to weld nor did he know that Johnson's salary would increase as a result of his promotion into the welding department. ECF No. 33-3 at 23–24.

---

[2] It is important to note that Johnson has not brought a Section 1983 claim under a *Monell* theory. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (to hold a municipality liable under a Section 1983 claim, a plaintiff must prove that the municipality adopted a policy or custom that violated the plaintiff's constitutional rights). He never named a municipality as a defendant and has raised no arguments claiming that a municipality should be held liable for his entrapment.

In fact, Leonard did not know until after charges had been filed against Johnson that Telfor had become Johnson's supervisor after the second sale of marijuana. *Id.* at 24–25.

Telfor's deposition corroborates Leonard's deposition. He denied ever assisting Johnson with his welding and when asked whether he agreed with Johnson's claim on the issue, Telfor responded, "100 percent no." ECF No. 33-2 at 20. Telfor went on to state that he never told Leonard that Johnson was selling him marijuana for a promotion because Telfor never promised Johnson a promotion in the first place. *Id.* at 41. Telfor claims he simply asked Johnson to sell him marijuana and Johnson agreed. *Id.* at 20–21. Since there is no evidence of Leonard's awareness of Telfor's unlawful behavior, Leonard cannot be found to possess a "culpable state of mind" concerning Telfor's conduct. *Hays v. Jefferson County, Ky.*, 668 F.2d 869, 873 (6th Cir. 1982).

For these reasons, all three of Johnson's Section 1983 claims are unsuccessful. Since Leonard lacked knowledge of Telfor's alleged misconduct, he cannot be found liable under an agency theory as Telfor's supervisor.

**D.**

Johnson further contends that even if Leonard did not know of Telfor's entrapping conduct, circumstantial evidence exists from which he should have known. Johnson claims that Leonard lacked probable cause to arrest and prosecute him because Leonard ignored exculpatory evidence before him. However, law enforcement officers are not required to investigate a suspect's affirmative defenses in order to find probable cause. *Sykes*, 625 F.3d at 305; *Fridley v. Horrighs*, 291 F.3d 867, 872–873 (6 Cir. 2002); *Ahlers v. Schebil*, 188 F.3d 365, 371 (6th Cir. 1999) ("Once probable cause is established, an officer is under no duty to investigate further or to look for additional evidence which may exculpate the accused."). An officer lacks probable cause only if "a reasonable police officer would *conclusively* know that an investigative target's behavior is

protected by a legally cognizable affirmative defense." *Painter v. Robertson*, 185 F.3d 557, 571 n. 21 (6th Cir. 1999) (emphasis added). The Sixth Circuit has set a high bar for a plaintiff to meet this standard. *Fridley,* 291 F. 3d at 874–875 (granting summary judgment on a false arrest claim in favor of law enforcement officers even when the officers knew the plaintiffs would likely raise an affirmative defense at trial); *Rhodes v. Pittard*, 485 Fed.Appx. 113, 116 (6th Cir. 2012) (granting summary judgment in favor of law enforcement officers even when the plaintiff at the time of arrest explained his affirmative defense to the officers); *Harvey v. Carr*, 616 Fed.Appx. 826, 829 (6th Cir. 2015) (granting summary judgment in favor of a law enforcement officer because the officer could not have conclusively known that the plaintiff's conduct fulfilled the legal requirements of an affirmative defense).

Johnson claims that various statements he made during the sales should have put Leonard on notice that Telfor was entrapping Johnson. ECF No. 42 at 9–10. These include, "I'm trying to get in over to welding," "I know you shouldn't have to do deals like this to do that shit," and "I know I can do the job, hopefully seriously I really wanna move over…or else I'm leaving." ECF No. 33-9. During the third sale, Johnson mentions that his life has improved since he was promoted. ECF No. 33-10. None of these statements would have led a reasonable officer to conclusively know that Telfor was entrapping Johnson. Johnson himself admits that "Mr. Telfor never comes out and says the promotion was because of the selling of the marijuana." ECF No. 42 at 5.

At the conclusion of the second sale, Johnson said to Telfor, "See you tomorrow morning." It is too far a stretch to conclude that this statement would lead a reasonable officer to conclusively know that Telfor was entrapping Johnson. The statement could easily be construed as a reference to the coworkers seeing each other at work the next morning at 7:00am, the start of the usual

workday. ECF No. 33-6 at 96. The same statement, "See you tomorrow morning," was made during the third sale after Johnson had already been promoted to welding. ECF No. 33-10. He was presumably no longer meeting with Telfor before work because Johnson had already passed his welding tests and was working as a welder. This statement would not lead a reasonable officer to conclusively know that Telfor was entrapping Johnson.

During the third sale, Johnson said to Telfor, "Remember, patient to patient." ECF No. 33-10. Prior to making this statement, Johnson was telling Telfor about how his life had changed since starting his new job. *Id.* Immediately after making this statement, the two men said goodbye and drove away. *Id.* The content and context of the statement would not lead a reasonable officer to infer that Telfor allegedly told Johnson that it was legal to sell marijuana between patients.

## IV.

In summation, all three of Johnson's Section 1983 claims contain an element of knowledge and intent. Leonard is not liable under these claims because he lacked knowledge of Telfor's misconduct. Telfor's wrongdoing cannot be ascribed to Leonard on the simple basis of *respondeat superior*. Furthermore, Johnson's recorded statements did not create an obligation requiring Leonard to investigate whether Johnson could claim an affirmative defense of entrapment. Johnson's Section 1983 claims are without merit.

## V.

Accordingly, it is **ORDERED** that Defendant Leonard's motion for summary judgment, ECF No. 33, is **GRANTED**.

- 12 -

It is further **ORDERED** that Counts One, Two, and Three of Plaintiff's complaint, ECF No. 1, are **DISMISSED**.

Dated: October 3, 2018                    s/Thomas L. Ludington
                                          THOMAS L. LUDINGTON
                                          United States District Judge

---

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on October 3, 2018.

                    s/Kelly Winslow
                    KELLY WINSLOW, Case Manager

---